UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GUSTAVIA HOME, LLC,

                          Plaintiff,

          - against -

YVETTE HOYER; SHAUNA M. PAUL;
UNITED STATES OF AMERICA/INTERNAL
REVENUE SERVICE; NEW YORK STATE
DEPARTMENT OF TAXATION AND
FINANCE; CITY OF NEW YORK
DEPARTMENT OF TRANSPORTATION
PARKING VIOLATIONS BUREAU; CITY
OF NEW YORK ENVIRONMENTAL
CONTROL BOARD AND JOHN DOE "1"
through "12", said persons or parties having or
claimed to have a right, title or interest in the
mortgaged premises herein, their respective
names or presently unknown to Plaintiff,

                          Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-4015 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

On July 19, 2016, Gustavia Home, LLC ("Plaintiff") commenced this diversity mortgage

foreclosure action under Article 13 of the New York Real Property Actions and Proceedings Law

("RPAPL") § 1301, seeking to foreclose on a mortgage encumbering the property located at 361

Vernon Avenue, Brooklyn, New York 11206 (the "Property"). (Compl., Dkt. 1, ¶ 1.) On June 14,

2017, Defendants Yvette Hoyer and Shauna M. Paul, by counsel, filed an answer to the complaint

in which they substantially denied Plaintiff's allegations, asserted numerous affirmative defenses,

and advanced one counterclaim. (Answer, Dkt. 31.) Plaintiff now seeks an order: (1) granting

summary judgment in Plaintiff's favor pursuant to Fed. R. Civ. P. 56(a); (2) striking the answer,

affirmative defenses, and counterclaim interposed by Defendants; and (3) such other and further

relief this Court deems proper.  (Pl.'s Mot. for Summ. J., Dkt. 59, at 1–2.)  Defendants, for their

part, submitted a cross-motion requesting that the Court grant summary judgment in their favor

and dismiss the complaint.  (Defs.' Cross-Mot. for Summ. J., Dkt. 57, at 1.)  The Court concludes

that Plaintiff has met its burden of proof and that Defendants have failed to advance evidence to

rebut the *prima facie* case established by Plaintiff.  For the reasons explained below, Plaintiff's

motion for summary judgment is granted, Defendants' cross-motion for summary judgment is

denied, Plaintiff's motion to strike Defendants' answer and affirmative defenses is denied as moot,

and Defendants' counterclaim is dismissed.

## BACKGROUND

### I.    Relevant Facts

The following facts, taken from the parties' Rule 56.1 statements[1] and relevant portions of

the record, are undisputed unless otherwise noted.  Plaintiff—a single-member limited liability

company organized under Florida law—has one member, an individual domiciled in Florida.  (Pl.

56.1,[2] Dkt. 61, ¶¶ 1–2.)  On June 15, 2005, Defendant Hoyer executed to First Franklin, A Division

of National City Bank of Indiana ("First Franklin") a mortgage that encumbers the Property.[3]  (Pl.

---

[1] Pursuant to Local Civil Rule 56.1(d), "[e]ach statement by the movant or opponent pursuant to [a summary judgment motion], including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  To the extent "the record does not support certain critical assertions" in the parties' 56.1 statements, the Court has disregarded those unsupported assertions. *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).

[2] Unless otherwise noted, a standalone citation to either party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a party's 56.1 statement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document.

[3] Defendant Hoyer resides in an apartment on the second floor of the Property with her niece, Defendant Paul.  (Affidavit of Shauna M. Paul, Dkt. 40-2, ¶¶ 2–3.)

56.1 ¶ 3.) Defendant Hoyer executed a note to First Franklin on that same day. (Pl. 56.1 ¶ 4.) The mortgage and note were eventually assigned to Plaintiff. (Compl. Ex. D at 6; Affidavit of Jared Dotoli ("Dotoli Aff."), Dkt. 64, ¶ 5.) On March 30, 2016, a "Default Notice" was sent to Defendant Hoyer, explaining that she was in default, that she had thirty days after receipt of the notice to dispute the validity of the debt, and that a payment[4] was due within ninety days from the date on which the letter was sent, after which the loan would be accelerated should Defendant Hoyer fail to pay. (Pl. 56.1 ¶ 5.) Additionally, Plaintiff's mortgage servicer sent Defendant Hoyer a "Pre-Foreclosure Notice" stating that, as of March 30, 2016, Defendant Hoyer was in default and the default could be cured by making a specified payment,[5] which would be due within ninety days. (Pl. 56.1 ¶ 6.) Defendant Hoyer failed to make any payment by the deadline. (*Id.* ¶ 7.)

## II. Procedural History

Plaintiff commenced this action on July 19, 2016 to foreclose the mortgage encumbering the Property. (*Id.* ¶ 8.) Defendants submitted an answer in which they substantially denied Plaintiff's allegations (Answer ¶¶ 1–44), asserted numerous affirmative defenses (*id.* ¶¶ 45–96), and advanced one counterclaim (*id.* ¶¶ 97–100). The parties entered the discovery process (Dkt. 29). On October 17, 2017, Plaintiff moved for entry of an order appointing a receiver to take

---

[4] Curiously, the "Default Notice" dated March 30, 2016—affixed to Plaintiff's Complaint as Exhibit E—contains two different monetary figures. On the first page, it states, "[t]he amount required to cure your default as of the date of this letter is the sum of payments that have come due on and after the date of default, September 1, 2008, plus late charges, periodic adjustments to the payment amount and costs, all of which total *$84,649.73*." (Compl. Ex. E at 1 (emphasis added).) But on the second page, it states, "[a]s of the date of this letter, the total amount of the debt owed is the sum of the unpaid principal balance, which is *$104,730.04*." (*Id.* at 2 (emphasis added).) For reasons discussed, *infra*, disputes about the amount Defendant Hoyer was required to pay to cure the default are immaterial for summary judgment purposes.

[5] Adding to the confusion, the "Pre-Foreclosure Notice" specified yet another monetary payment different from the two specified in the "Default Notice": $183,450.15 "plus all applicable penalties, late charges, and additional fees and expenses." (Compl. Ex. F. at 3.)

control of the Property (Dkt. 39), which was granted (Dkt. 71).  The parties filed competing motions for summary judgment.  (*See* Dkts. 57 & 59.)

## DISCUSSION

### I.  Standard of Review

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial.  *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the" non-movant. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted).  In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props.*, *Inc.*

*v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48. "The same standard of review applies when the court is faced with [a] cross-motion[] for summary judgment." *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (quotation omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## II.  Analysis

### A.  Plaintiff's *Prima Facie* Case

"Under New York state law, three elements must be established in order to sustain a foreclosure claim: (1) the proof of the existence of an obligation secured by a mortgage; (2) a default on that obligation by the debtor; and (3) notice to the debtor of that default." *United States v. Paugh*, 332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004); *see also Builders Bank v. Charm Devs. II, LLC*, Nos. 09-CV-3935 & 09-CV-4410, 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010) ("[S]ummary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." (quotation omitted)).

The Court concludes that Plaintiff has proven the existence of an obligation secured by a mortgage. Although the parties do not appear to question the existence of such an obligation ((Pl. 56.1 ¶ 3); (Defs.' 56.1, Dkt. 56-9, ¶ 3)), Defendants "dispute that Plaintiff was the owner and holder of the note and mortgage when the complaint was filed on the grounds that the cited material

either does not support Plaintiff's claim or is inadmissible" (Defs.' 56.1 ¶ 9). But Plaintiff submitted to the Court, as Exhibit D affixed to its complaint, a document titled "Corporate Assignment of Mortgage" that plainly verifies that Plaintiff was assigned the mortgage on the Property on December 30, 2015. (Compl. Ex. D. at 6.) Because Defendants adduce no basis for questioning the veracity of this document or the other applicable evidence presented by Plaintiff (*see* Affidavit of Note Possession ("Note Aff."), Dkt. 60-5, ¶¶ 7–11), the Court concludes that Plaintiff was, in fact, the owner and holder of the note and mortgage when the complaint was filed in this case. *See BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("It is not sufficient [for a party opposing summary judgment] merely to assert a conclusion without supplying supporting arguments or facts." (quotation omitted)); *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 299 n.2 (E.D.N.Y. 2013) (disregarding factual assertions on summary judgment "[t]o the extent that the parties have failed to cite to admissible evidence in support of [them] in their respective 56.1 Statements and Responses").

Furthermore, the Court concludes that Plaintiff has established a default on the mortgage obligation by the debtor, the second element of its *prima facie* case. In evaluating whether this element has been satisfied, "[n]o general allegations of default will be assumed to be true; rather, [t]here must be some proof in the form of an affidavit of a person with knowledge, or a complaint verified by a person with knowledge." *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007). In this case, Plaintiff submitted an affidavit from Jared Dotoli, Plaintiff's single member, that references the allegation in the complaint that "Defendant Hoyer failed to meet the regular monthly payment that became due on September 1, 2008 and has failed to cure said default as of the date hereof" and states that Mr. Dotoli "know[s] this information to be true of [his] own knowledge." (Dotoli Aff. ¶ 44 (referencing (Compl. ¶ 32)).) Additionally,

Plaintiff submitted an affidavit from Stephanie Childress, Asset Manager at Plaintiff's mortgage servicer, who confirmed that both the "Default Notice" and "Pre-Foreclosure Notice"—documents that demonstrate that default occurred—were prepared in the ordinary course of business. (*See* Affidavit of Stephanie Childress ("Childress Aff"), Dkt. 66, ¶¶ 1, 4, 29).[6]

Although Defendants deny that this default occurred (Answer ¶ 32), they have not produced any evidence confirming that Defendant Hoyer in fact made the required payment that was due on September 1, 2008 or any of the required payments that followed, or that she was not required to make such payments. The Court therefore rules that Plaintiff has proven that Defendant Hoyer defaulted on the mortgage. *See Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y. 2018) (holding that the plaintiff proved default where it presented an affidavit from its single member that included a statement "based on his own knowledge and from reviewing Plaintiff's business records kept in the ordinary course of Plaintiff's business that defendant failed to cure the default" (quotation and brackets omitted)).

The Court additionally concludes that the third element of Plaintiff's mortgage foreclosure claim—notice to the debtor of the default—has been satisfied. Plaintiff's mortgage servicer mailed

---

[6] Defendants correctly observe that Plaintiff submitted the Childress Affidavit for the first time in reply, and that the Court would ordinarily "not consider this affidavit as arguments cannot be made for the first time in reply papers." *Day Vill. Ltd. P'ship v. CW Capital, LLC*, No. 06-CV-3424, 2006 WL 2572118, at *3 (S.D.N.Y. Sept. 7, 2006). (Mem. of Law in Reply to Pl.'s Opp'n to Defs' Cross-Mot. for Summ. J., Dkt. 58, at 7.) However, where an affidavit submitted with a reply brief "merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment," the Court has discretion to consider it. *Kelly v. Times/Review Newspapers Corp.*, No. 14-CV-2995, 2018 WL 1701999, at *8 (E.D.N.Y. Feb. 15, 2018). The Court concludes that these conditions are satisfied in the instant matter (*see* Mem. of Law in Opp'n to Defs.' Cross-Mot. for Summ. J. and in Further Supp. of Pl.'s Mot. for Summ. J., Dkt. 65, at 15 n.7 (noting that Plaintiff submitted the Childress Affidavit because Defendants' opposition brief identified apparent deficiencies in the Dotoli Affidavit)), and so considers the Childress affidavit. *See Lopez v. Hollisco Owners' Corp.*, 147 F. Supp. 3d 71, 79 (E.D.N.Y. 2015) (exercising discretion to consider reply declaration that was responsive to opposition).

Defendant Hoyer two notices informing her of the default: (1) a "Default Notice" mailed on March 30, 2016 (Pl. 56.1 ¶ 5), and (2) a "Pre-Foreclosure Notice" also mailed on March 30, 2016 (*id.* ¶ 6). Although Defendants dispute that these notices were sent (Defs. 56.1 ¶¶ 5–6), they fail to adduce any basis for questioning the veracity of the documents submitted by Plaintiff (*see* Compl. Exs. E & F) reflecting that notice was given in two different forms. Because Defendants "do[] not provide evidentiary support" to cast doubt on whether the notices of default were sent, and there is no evidence in the record suggesting that notice of default was not provided, *Gustavia Home*, 321 F. Supp. 3d at 416, the Court holds that Plaintiff has satisfied the third and final element of its *prima facie* case. *See R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) ("While doubts must be resolved in favor of the party opposing the [summary judgment] motion, the opposing party must provide concrete particulars showing that a trial is needed, and it is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to that motion." (quotations and brackets omitted)).

**B. Affirmative Defenses**

"Once a mortgagee's *prima facie* case is established, the mortgagor must make an affirmative showing that a defense to the action exists." *Builders Bank*, 2010 WL 3463142, at *2 (quotation omitted). Defendants' answer raises sixteen affirmative defenses. (Answer ¶¶ 45–96.) The Court addresses each in turn.

1. Failure to State a Claim

Defendants' first affirmative defense is that "Plaintiff fails to state a cause of action upon which relief may be granted." (*Id.* ¶ 46.) Having determined that Plaintiff has established its *prima facie* case, the Court rejects this defense. *See Signature Bank v. HKD Prods., Inc.*, No. 12-

CV-6149, 2013 WL 1130247, at *2 (S.D.N.Y. Mar. 19, 2013) (rejecting failure-to-state-a-claim defense where Plaintiff "ha[d] established a *prima facie* case").

2. <u>Failure to Meet Condition Precedent in Mortgage</u>

Defendants' second affirmative defense is that Plaintiff failed to send the required written notice pursuant to paragraph 20 of the mortgage. (Answer ¶ 49.) Paragraph 20 of the mortgage, titled "LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS," provides as follows:

> If all of the conditions stated in subparagraphs (A), (B), and (C) of this Paragraph 20 are satisfied, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Mortgage. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment In Full[]". . . .
>
> Lender may require Immediate Payment in Full under this Paragraph *only if* all of the following conditions are satisfied:
>
> (A) I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amounts that I owe to Lender under the Note and under this Mortgage; and
>
> (B) Lender gives to me, in a manner described in Paragraph 15 above, a notice that states:
>
>> i. The promise or agreement that I failed to keep;
>>
>> ii. *The action that I must take to correct that failure*;
>>
>> iii. A date by which I must correct the failure. That date must be at least 10 days from the date on which the notice is mailed to me;
>>
>> iv. That if I do not correct the failure by the date stated in the notice, I will be in default and Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;

> v. That if I meet the conditions stated in Paragraph 21[7] below, I will have the right to have any lawsuit for foreclosure and sale discontinued and to have the Note and Mortgage remain in full force and effect as if Immediate Payment In Full had never been required; and
>
> vi. That I have the right in any lawsuit for foreclosure and sale to argue that I did not fail to keep any of my promises or agreements under the Note or under this Mortgage, and to present any other defenses that I may have; and
>
> (C) I do not correct the failure stated in the notice from Lender by the date stated in that notice.

(Compl. Ex. C at 8–9 (emphases added).)

Defendants argue that Plaintiff's notice was insufficient because it failed to properly identify the action that Defendant Hoyer had to take to correct the default. (Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Defs.' Cross-Mot. for Summ. J., Dkt. 57-10, at 6–9.) Specifically, Defendants point to the inconsistency discussed earlier in footnotes 4 and 5 of this Memorandum & Order—namely, that on March 30, 2016, Plaintiff sent Defendant Hoyer two separate notices that articulated different payment amounts required to cure the default. (*Compare* (Compl. Ex. E at 1), *with* (Compl. Ex. F at 3).)

The Court concludes that this argument is waived. In their answer to the complaint, Defendants stated that "Plaintiff has failed to send the required written notice pursuant to paragraph 20 of the mortgage" (Answer ¶ 49), but made no mention of the inconsistent amounts

---

[7] Paragraph 21 provides that, even if the lender has required immediate payment in full, the borrower may have the right to discontinue a lawsuit brought by the lender for foreclosure if the borrower meets all of the following conditions: "(A) [she] pay[s] to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and (B) [she] correct[s] [her] failure to keep any of [her] other promises or agreements made in this Mortgage; and (C) [she] pay[s] all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and (D) [she] do[es] whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and [borrower's] obligations under the Note and under this Mortgage continue unchanged." (Compl. Ex. E at 9.)

identified in each of the notices.[8]  Not until Defendants submitted their Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of their Cross-Motion for Summary Judgment did Defendants make the specific argument that the notices articulating different and/or incorrect amounts required to cure the default rendered Plaintiff unable to seek foreclosure on the mortgage.  (*See* Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Defs.' Cross-Mot. for Summ. J. at 6–9.)

"[I]t is well established that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."  *Skates v. Inc. Vill. of Freeport*, 265 F. Supp. 3d 222, 240 (E.D.N.Y. 2017) (quotation omitted).  Defendants' answer "d[id] not make any reference" to the inconsistent monetary figures in Plaintiff's notices; rather, Defendants "raised this argument for the first time in their papers opposing [Plaintiff's] motion for summary judgment."  *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d. Cir. 2006).  "Because [Defendants] failed to include this [argument] in [their Answer], instead raising it for the first time in opposition to summary judgment, it is waived."  *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 135 (S.D.N.Y. 2013); *see also Perkins v. Am. Transit Ins. Co.*, No. 10-CV-5655, 2013 WL 174426, at *21 (S.D.N.Y. Jan. 15, 2013) ("An opposition brief is not the place to raise new allegations.").

Even assuming, *arguendo*, that Defendants had not waived this argument, the Court would nevertheless reject it on the merits.  "A dispute as to the exact amount owed by the mortgagor to the mortgagee may be resolved after a reference pursuant to RPAPL 1321, and the existence of

---

[8] Where, as here, the defendants have counsel, the court will not "liberally construe" the notice argument made in their answer as implicitly including the notice argument made in their summary judgment brief.  *CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*, No. 12-CV-1865, 2014 WL 4175798, at *11 n.13 (E.D.N.Y. Aug. 30, 2014).

such a dispute does not preclude the issuance of summary judgment directing the sale of the mortgaged property." *Crest/Good Mfg. Co. v. Baumann*, 160 A.D.2d 831, 831–32 (N.Y. App. Div. 1990). Under New York law governing mortgage foreclosure actions, "[i]f the defendant fails to answer within the time allowed or the right of the plaintiff is admitted by the answer, upon motion of the plaintiff, the court shall ascertain and determine the amount due, or direct a referee to compute the amount due to the plaintiff . . . ." RPAPL § 1321; *see also U.S. Bank Trust, N.A. v. Dingman*, No. 16-CV-1384, 2016 WL 6902480, at *4 (S.D.N.Y. Nov. 22, 2016) ("Pursuant to section 1321 of the RPAPL, the trial court has the authority to compute the amount owed or appoint a referee to the same."). Thus, even had this argument not been waived, inconsistencies regarding the amount to cure the default identified in the notices would not change the Court's decision to grant summary judgment in Plaintiff's favor.[9]

### 3. Failure to Meet Condition Precedent under RPAPL § 1304

Defendants' third affirmative defense is that "Plaintiff failed to comply with a condition precedent to the commencement of the foreclosure action where Plaintiff failed to properly serve notice required by [RPAPL] § 1304." (Answer ¶ 52.) "RPAPL § 1304 requires a lender, assignee, or mortgage loan servicer to transmit" to the borrower, at least 90 days prior to commencing a legal action for a mortgage foreclosure, a notice that contains: "(1) text in fourteen-point type;

---

[9] The cases that Defendants cite to the contrary are distinguishable, as those cases did not involve the specific amount articulated to cure the default in an otherwise satisfactory notice, but rather hinged on whether *any* notice was actually mailed. *See Wells Fargo Bank, N.A. v. Eisler*, 118 A.D.3d 982, 983 (N.Y. App. Div. 2014) (affirming denial of summary judgment to plaintiff-mortgagee where plaintiff "failed to show that the required notice was mailed by first class mail or actually delivered to the notice address if sent by other means, as required by the mortgage agreement"); *HSBC Mortg. Corp. (USA) v. Gerber*, 100 A.D.3d 966, 967 (N.Y. App. Div. 2012) (reversing summary judgment in favor of plaintiff-mortgagee where plaintiff "failed to establish that the required notice was mailed to the defendant by first class mail or actually delivered to her notice address if sent by other means, as required by the mortgage agreement").

(2) text stating 'YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY'; [and] (3) information regarding government-approved housing counseling agencies available to assist borrowers in seeking home loan modifications . . . ." *Onewest Bank, N.A. v. Guerrero*, No. 14-CV-3754, 2016 WL 3453457, at *5 (S.D.N.Y. June 17, 2016). The notice must be transmitted "via registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, the residence subject to the mortgage." *Id.* "Proper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action." *Wells Fargo Bank, N.A. v. Ullah*, No. 13-CV-485, 2015 WL 3735230, at *9 (S.D.N.Y. June 15, 2015) (brackets and quotation omitted). Plaintiff has the affirmative obligation to establish strict compliance with RPAPL § 1304 regardless of the adequacy of Defendants' briefing. *See United States v. Parks*, No. 17-CV-01262, 2018 WL 5793569, at *3 (W.D.N.Y. Oct. 4, 2018) ("The plaintiff is required to prove its allegation by tendering sufficient evidence demonstrating the absence of material issues as to its strict compliance with RPAPL 1304, and failure to make this showing requires denial of the motion, regardless of the opposing papers." (quotation omitted)).

Defendants argue that the notice Plaintiff provided was defective on its face, such that dismissal of Plaintiff's complaint is required as a matter of law. (*See* Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Defs.' Cross-Mot. for Summ. J. at 5–9.) As with their argument regarding paragraph 20 of the mortgage, Defendants contend that the "Pre-Foreclosure Notice" failed to comply with RPAPL § 1304 because it articulated an incorrect amount to cure the default that differed from the amount articulated in the "Default Notice." (*Id.*) The Court is not persuaded.

The Court holds that Plaintiff's "Pre-Foreclosure Notice" was not rendered insufficient under RPAPL § 1304 because it contained an amount to cure that differed from that articulated in the "Default Notice" or because it was incorrect for some other reason. "At best, [Defendants'] allegations challenge only the amount of the mortgage debt," not the adequacy of the notice they received as measured by the requirements of RPAPL § 1304,[10] and therefore these allegations do not preclude summary judgment in Plaintiff's favor. *Johnson v. Gaughan*, 128 A.D.2d 756, 757 (N.Y. App. Div. 1987). Rather, Defendants may "apply to the court to have [their] claims considered pursuant to RPAPL 1321, to the extent that they may relate to the amount due on the mortgage debt." *Id*. As the Court observed in its analysis of Plaintiff's alleged non-compliance with paragraph 20 of the mortgage, *supra*, "[a] dispute as to the exact amount owed by the mortgagor to the mortgagee" does not render notice non-compliant with RPAPL § 1304 so as to "preclude the issuance of summary judgment." *Baumann*, 160 A.D.2d at 832.[11]

---

[10] As discussed *infra*, Defendants additionally assert that Plaintiff's notice did not comply with the requirements of RPAPL § 1303, some of which overlap with the requirements of RPAPL § 1304.

[11] Defendants fail to cite a single case directly supporting their argument that notice is rendered non-complaint with RPAPL § 1304 because the amount to cure articulated therein was incorrect or differed from the amount articulated in separate correspondence, and nearly all of the cases Defendants do cite for this proposition are distinguishable. *See Flagstar Bank, FSB v. Damaro*, 145 A.D.3d 858, 860 (N.Y. App. Div. 2016) ("The notice in this case, sent on August 25, 2010, advised the [mortgagor] that she had until August 23, 2010 to cure her default. Therefore, the RPAPL 1304 notice was defective on its face . . . ."); *Guerrero*, 2016 WL 3453457, at *5–6 (holding that "[p]laintiff has not overcome the initial hurdle of demonstrating compliance with RPAPL § 1304" where plaintiff failed to produce sufficient proof of mailing); *JPMorgan Chase Bank, N.A. v. Kutch*, 142 A.D.3d 536, 537 (N.Y. App. Div. 2016) (same); *Aurora Loan Servs., LLC v. Weisbaum*, 85 A.D.3d 95, 106 (N.Y. App. Div. 2011) (mortgagee failed to satisfy its *prima facie* burden where the notice was sent to the wrong individual, the notice did not contain "the statutorily-required list of counseling agencies," and the mortgagee failed to "submit an affidavit of service"); *First Nat'l Bank of Chi. v. Silver*, 73 A.D.3d 162, 164, 169 (N.Y. App. Div. 2010) (holding that mortgagee's complaint "should have been dismissed" where mortgagee failed to produce sufficient proof of mailing). *But see City Sav. Bank v. DePasquale*, 113 A.D.3d 595, 595 (N.Y. App. Div. 2014) (affirming denial of plaintiff-mortgagee's summary judgment motion

4. Failure to Meet Condition Precedent under RPAPL § 1303

Defendants' fourth affirmative defense is that "Plaintiff failed to comply with a condition precedent to the commencement of the foreclosure action where Plaintiff failed to properly serve notice required by Real Property and Proceedings Law § 1303." (Answer ¶ 56.) RPAPL § 1303 "requires a foreclosing party in a residential mortgage foreclosure action to attach a notice including sources of information and assistance to homeowners in foreclosure to the summons and complaint" and "lays out strict guidelines for the required content and the form of the notice," which "must: (1) be in bold, fourteen-point font; (2) be printed on different colored paper than the summons and complaint; (3) include 'Help for Homeowners in Foreclosure' in the title in bold, twenty-point font; and (4) be on its own page." *United States v. Starr*, No. 16-CV-1431, 2017 WL 4402573, at *3 (S.D.N.Y. Sept. 29, 2017).

A review of the record, however, confirms that the notice Plaintiff sent to Defendants satisfied RPAPL § 1303. Plaintiff submitted a sworn affidavit from an individual named Lisandro Luna. In the affidavit, Lisandro Luna attests to having served Defendants Hoyer and Paul with a "1303 NOTICE-Help for Homeowners in Foreclosure in bold fourteen-point type and printed on colored paper, [with] the title to the notice printed in twenty-point type," along with the summons, complaint in the instant action, and certificate of merit.[12] ((Affidavit of Service on Defendant

_____

where "its notice to the homeowners required by RPAPL 1304 contained a factual inaccuracy" in its calculation of the number of days homeowners were in default).

[12] A certificate of merit is "a certificate, signed by the attorney for the plaintiff, certifying that the attorney has reviewed the facts of the case and that, based on consultation with representatives of the plaintiff identified in the certificate and the attorney's review of pertinent documents, including the mortgage, security agreement and note or bond underlying the mortgage executed by defendant and all instruments of assignment, if any, and any other instrument of indebtedness including any modification, extension, and consolidation, to the best of the attorney's knowledge, information and belief there is a reasonable basis for the commencement of such action

Hoyer ("Hoyer Service Aff."), Dkt. 17, at 1); (Affidavit of Service on Defendant Paul (Paul Service Aff."), Dkt. 18, at 1).)  This evidence suffices to establish that Plaintiff complied with RPAPL § 1303.  *See West Coast 2014-7, LLC v. Tolson*, No-15-CV-6306, 2017 WL 3405517, at *10–11 (E.D.N.Y. Aug. 7, 2017) (holding that compliance with RPAPL § 1303 was established where the plaintiff "submitted an affidavit of service" indicating that residents were served with pleadings and a certificate of merit, as well as "[a] second affidavit of mailing" indicating that residents "were served with § 1303 Notices by first-class mail and certified mail").

    5.  <u>Deceptive Practices</u>

    For their fifth affirmative defense, Defendants allege that "the note and mortgage was [sic] procured by deceptive and fraudulent practices constituting 'predatory lending' as contemplated by State and Federal law"; specifically, that Plaintiff (1) "intentionally exercised improper, inadequate or nonexistent due diligence regarding Defendants' ability to repay the amounts due under the note and mortgage"; (2) "intentionally failed to provide state and federally mandated Truth-In-Lending documents ('TILA disclosures') regarding material elements of the financing being obtained, including, without limitations, matters relating to closing costs and fees, counseling services, loan terms and amortization schedules"; and (3) "violated New York Banking Law § 6-L (2) (m), in that the amount financed to cover costs of the loan was in excess of three (3) percent of the principal amount of the loan."  (Answer ¶¶ 59–61.)

    At the outset, the Court notes that Defendants, in their Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of their Cross-Motion for Summary Judgment, fail to address Plaintiff's arguments against the applicability of these defenses—

---

and that the plaintiff is currently the creditor entitled to enforce rights under such documents." N.Y. C.P.L.R. § 3012-b(a).

suggesting that these defenses have been abandoned. *See In re UBS AG Secs. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments made by its opponent that it fails to address); *First Capital Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392–93 n.116 (S.D.N.Y. 2002) (considering an argument not addressed in opposition brief to be waived).

Waiver aside, the Court nevertheless concludes that these defenses have not been adequately proven on the evidence submitted. With respect to Defendants' contention that Plaintiff "intentionally exercised improper, inadequate or nonexistent due diligence regarding Defendants' ability to repay the amounts due" (Answer ¶ 59), Defendants fail to direct the Court to any evidence in support of that claim. *See E. Savings Bank, FSB v. Ibragimov*, No. 11-CV-496, 2012 WL 13098499, at *2–3 (E.D.N.Y. Aug. 9, 2012) (rejecting this defense where defendants' "only evidence of inadequate due diligence and of injury is that they cannot afford to pay their mortgage"). As for the contention that Plaintiff failed to provide TILA disclosures mandated by 15 U.S.C. § 1640 (Answer ¶ 60), more than one year elapsed between the origination of the loan and Defendants' assertion of this defense—dooming any federal claim in the absence of equitable tolling, which Defendants have not argued applies. *See* 15 U.S.C. § 1640(e) ("any action under this section may be brought in any United States district court, . . . within one year from the date of the occurrence of the violation"). As for their New York Banking Law § 6-L contention (Answer ¶ 59), Defendants have failed to show that "the annual percentage rate of the home loan at consummation of the transaction exceed[ed] eight percentage points over the yield on treasury securities having comparable periods of maturity to the loan" so as to render Defendants' mortgage a high-cost home loan under the statute. N.Y. Banking Law § 6-L(g)(i).

6. Standing

Defendants' sixth affirmative defense is that "Plaintiff lacks standing to foreclose the subject mortgage because it cannot demonstrate that the subject note and mortgage were duly assigned to it." (Answer ¶ 63.) "Under New York law, a plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (quotation and brackets omitted). Because, as previously discussed, Plaintiff has "produced evidence showing that it was the holder of the Mortgage and Note at the time it filed suit" (*see* (Compl. Ex. D at 6); (Dotoli Aff. ¶ 5)), the Court rejects Defendants' standing argument. *E. Savings Bank, FSB v. Springer*, No. 11-CV4431, 2013 WL 12358270, at *9 (E.D.N.Y. May 10, 2013).

7. Statute of Limitations

Defendants' seventh affirmative defense is that "[t]he alleged cause(s) of action stated on behalf of the Plaintiff in the Complaint . . . is (are) barred, in whole or in part, by the Statute of Limitations." (Answer ¶ 66.) Under New York law, "an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property" must be commenced within six years. N.Y. C.P.L.R. § 213(4). "The statute of limitations in a mortgage foreclosure action begins to run from the due date for each unpaid installment, or from the time the mortgagee is entitled to demand full payment, or from the date the mortgage debt has been accelerated." *Plaia v. Safonte*, 45 A.D.3d 747, 748 (N.Y. App. Div. 2007).

"However, even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire

debt." *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982 (N.Y. App. Div. 2012) (quotation omitted). "When the acceleration of the mortgage debt on default is made optional with the holder of the note and mortgage," as it is in this case (*see* (Note & Alonges, Compl. Ex. B ¶ 11); (Mortgage, Compl. Ex. C ¶ 20)), "some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 198, 201 (S.D.N.Y. 2018) (quotation omitted). "In such cases, the mortgagor must be provided with notice of the mortgagee's decision to exercise the option to accelerate the mortgage debt and such notice must be clear and unequivocal." *Mcintosh v. Fed. Nat'l Mortg. Ass'n*, No. 15-cv-8073, 2016 WL 4083434, at *4 (S.D.N.Y. July 25, 2016) (quotation omitted); *see also United States v. Alessi*, 599 F.2d 513, 515 n.4 (2d Cir. 1979) ("Such acceleration must consist of either notice of election to the Mortgagor or of some unequivocal overt act (such as initiating a foreclosure suit) manifesting an election in such a way as to entitle the mortgagor, if he desires, to discharge the principal of the mortgage.").

Defendant Hoyer first defaulted on September 1, 2008. (Dotoli Aff. ¶¶ 7, 50.) On March 30, 2016, notices of default were mailed to Defendant Hoyer that stated that the mortgage debt would be accelerated on June 28, 2016 should Defendant Hoyer fail to pay by that deadline. (*See* (Compl. Ex. E at 1); (Compl. Ex. F at 1, 3).) Plaintiff then commenced this action on July 19, 2016. (Compl. at 9.) Because Plaintiff commenced this action well within six years from June 28, 2016—the date on which the mortgage was accelerated—the Court rejects Defendants' statute-of-limitations argument. *See Assets Recovery 23, LLC v. Gasper*, No. 15-CV-5049, 2017 WL 3610568, at *8 (E.D.N.Y. July 25, 2017) ("Although either notice of a demand or commencement of a foreclosure action can constitute an affirmative act of acceleration, where the notice of default provides clear and unequivocal language that a loan would become due in its entirety upon

expiration of the curing period, the date of expiration provided in the notice serves as the date of acceleration for the purposes of the six-year-statute of limitations.").[13]

### 8. Failure to Meet Condition Precedent under RPAPL § 1306

Defendants' eighth affirmative defense is that "Plaintiff failed to comply with a condition precedent to the commencement of the foreclosure action where Plaintiff failed to properly serve notice required by [RPAPL] § 1306." (Answer ¶ 68.) RPAPL § 1306 provides that a "lender, assignee or mortgage loan servicer shall file with the superintendent of financial services . . . within three days of the mailing of the [RPAPL § 1304 notice] . . . the information required by subdivision two of this section." RPAPL § 1306(1). Subdivision 2 requires any such filing with the superintendent of financial services to "include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage, and such other information as will enable the superintendent to ascertain the type of loan at issue." *Id.* § 1306(2).

---

[13] The Court notes its concern about the policy implications of allowing a plaintiff-mortgagee to essentially choose for itself when precisely the statute of limitations will commence on its anticipated foreclosure action by strategically timing its decision to accelerate the mortgage debt. However, the Court is persuaded that New York law explicitly gives mortgagees this precise right:

> The statute of limitations for a mortgage-foreclosure action is six years under New York law. Typically, the statute begins to run from the due date for each unpaid installment. Even if a mortgage is payable in installments, however, once a mortgage debt is accelerated, the entire amount is due and the statute of limitations begins to run on the entire debt.

*Costa v. Deutsche Bank Nat'l Trust Co.*, 247 F. Supp. 3d 329, 340 (S.D.N.Y. 2017) (citations, quotations, and brackets omitted). In spite of any equitable considerations to the contrary, this Court, "sitting in diversity," must "recognize the supremacy of [state] law on this issue" and "apply it regardless of . . . opinions as to the wisdom or fairness of that law." *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1290 (10th Cir. 2005).

Although Defendants appear to have abandoned this defense by making no reference to it in their Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of their Cross-Motion, *First Capital*, 218 F. Supp. 2d at 392–93 n.116, the Court nevertheless rejects it on the merits. Plaintiff has submitted a document verifying that it filed the required documents with the New York State Department of Financial Services (*see* Proof of Filing Statement, Compl. Ex. F, at 1); (Childress Aff. ¶¶ 28, 31, 55).) Because Defendants have not shown "by admissible evidence a genuine and substantial issue rebutting" this evidence and instead "rely on conclusory allegations," the Court rejects this defense. *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 471 (S.D.N.Y. 2006) (quotation omitted).

9. Lack of Personal Jurisdiction

Defendants' ninth affirmative defense is that they "were not properly served with the summons and complaint" and therefore "this Court has not obtained personal jurisdiction" over them. (Answer ¶¶ 71–72.) "Federal Rule of Civil Procedure 4(e) governs service of process in diversity actions." *Schostak v. Wright*, No. 02-CV-8899, 2003 WL 1960581, at *2 (S.D.N.Y. Apr. 25, 2003). That rule provides that "an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . . ." Fed. R. Civ. P. 4(e)(1). Under New York law, personal service upon a natural person can be made

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

N.Y. C.P.L.R. § 308(2).

Because these requirements have been met, this Court properly exercises personal jurisdiction over Defendants. Lisandro Luna's affidavit confirms that he both delivered the summons to an individual of suitable age at Defendants' place of business and mailed a copy of the summons to Defendants at the Property "by first class mail in an envelope bearing the legend 'personal and confidential' and not indicating on the outside of the envelope that the communication is from an attorney or concerns an alleged debt." ((Hoyer Service Aff. at 1-2); (Paul Service Aff. at 1-2).) Because "conclusory denials of service are insufficient to counterbalance a process server's affidavit, and no affidavit by [Defendants] ha[s] been submitted to the Court to refute any of the specific facts established by the process server," the Court rejects this defense. *DeSouza v. Plus Funds Grp., Inc.*, No. 05-CV-5990, 2006 WL 2168478, at *4 (S.D.N.Y. Aug. 1, 2006); *see also Fed. Nat'l Mortg. Ass'n v. Ambrosio*, 123 A.D.3d 658, 658 (N.Y. App. Div. 2014) (defense of failure to provide service of process was properly rejected where "defendants failed to come forward with evidence rebutting the presumption of proper service created by the process server's affidavit").

### 10. Failure to Offset Damages

Defendants' tenth affirmative defense is that Plaintiff "failed to mitigate and lessen damages, if any were sustained, as required by law, and is barred from recovery by reasons thereof," and "Plaintiff breached the covenant of good faith and fair dealing inherent in every contract by not allowing Defendants to modify the loan." (Answer ¶¶ 74–75.) Although Defendants appear to have abandoned this defense by making no reference to it in their Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of their Cross-Motion, *First Capital*, 218 F. Supp. 2d at 392–93 n.116, the Court nevertheless rejects this defense on the merits. As with Defendants' other affirmative defenses relating to

disputes about the amount of money to which Plaintiff is entitled, "failure to mitigate damages is not an affirmative defense to a foreclosure action; rather, a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale." *Nwanganga*, 328 F. Supp. 3d at 1999.

As for the implied covenant of good faith and fair dealing inherent in every contract, "New York law prohibits either party from doing anything which will have the effect of destroying or injuring the rights of the other party to receive the rights of the contract," but "this implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract." *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 360 (S.D.N.Y. 2017) (quotations and citation omitted). In this case, the agreement between the original mortgagee and Defendant Hoyer plainly provided the mortgagee with the option of accelerating the loan and demanding the full amount due in the event of failure to cure default. (*See* (Note & Allonges, Compl. Ex. B ¶ 11); (Mortgage, Compl. Ex. C ¶ 20).) The Court therefore rejects this defense. *See Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) ("In order to find a breach of the implied covenant [of good faith and fair dealing], a party's actions must directly violate an obligation that may be presumed to have been intended by the parties." (quotation omitted)).

11. Unclean Hands

Defendants' eleventh affirmative defense is that Plaintiff's "complaint fails to even allege Plaintiff's own good faith and clean hands, much less the good faith and clean hands of its purported assignor. Therefore, Plaintiff has unclean hands and cannot use the mortgage to make good on a loan it knew was non-performing before taking the mortgage." (Answer ¶¶ 78–79.) Under New York law, "[t]he doctrine of unclean hands applies when the complaining party shows

that the offending party is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in [the] litigation and the party seeking to invoke the doctrine was injured by such conduct." *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 328 (S.D.N.Y. 2016) (quotation omitted).

The Court rejects this defense. First, Defendants' averment that Plaintiff's complaint failed to allege "good faith and clean hands, much less the good faith and clean hands of its purported assignor" (Answer ¶ 78) is irrelevant even if true, since "[t]he defendant who invokes the doctrine of unclean hands has the burden of proof." *Freedom Calls Found. v. Bukstel*, No. 05-CV-5460, 2006 WL 845509, at *23 (E.D.N.Y. Mar. 3, 2006). Second, Defendants provide no elaboration on why this specific defense should apply beyond the conclusory statements made in their answer. *See In re Cohen*, 422 B.R. 350, 381 (E.D.N.Y. 2010) (holding that in "the absence of any evidence of wrongful conduct by" the party alleged to have unclean hands, the defense was unavailable).

12. Frustration of Purpose

Defendants' twelfth affirmative defense is that "Plaintiff, through its various acts and omissions, has knowingly and intentionally frustrated Defendants' ability to perform as a subterfuge to file this foreclosure action." (Answer ¶ 81.) "The basic test under New York law of whether a contract's purpose has been frustrated is whether the parties contracted on a basic assumption that a particular contingency would not occur." *Shanghai Join Buy Co., Ltd. v. Pstex Grp., Inc.*, No. 04-CV-4449, 2004 WL 2471432, at *3 (S.D.N.Y. Nov. 1, 2004) (quotations omitted). "Frustration of purpose is limited to instances where a virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party." *Bierer v. Glaze, Inc.*, No. 05-CV-2459, 2006 WL 2882569, at *6 (E.D.N.Y. Oct. 6, 2006) (quotation omitted).

Although Defendants appear to have abandoned this defense by making no reference to it in their summary judgment brief, *First Capital*, 218 F. Supp. 2d at 392–93 n.116, the Court nevertheless rejects it on the merits. Defendants do not direct the Court to any evidence demonstrating the occurrence of any sort of unanticipated event that rendered performance of their obligations under the note and mortgage futile or impossible. *See Ebert v. Holiday Inn*, No. 11-CV-4102, 2014 WL 349640, at *7 (S.D.N.Y. Jan. 31, 2014) (frustration defense may only excuse performance "where the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible and where the impossibility was produced by an unanticipated event that could not have been foreseen or guarded against in the contract" (quotation omitted)).

13. Statute of Frauds

Defendants' thirteenth affirmative defense is that "the Statute of Frauds applies to invalidate any and all transfers of the mortgage and/or note that were not duly memorialized in writing and executed at the time of the transfers." (Answer ¶ 83.) Under New York law,

> [a]n estate or interest in property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereto authorized by writing.

N.Y. Gen. Oblig. Law § 5-703(1).

Plaintiff has submitted a document and accompanying affidavit demonstrating that the following transactions were memorialized in writing: (1) on February 8, 2006, First Franklin, A Division of National City Bank of Indiana, assigned Defendants' note and mortgage to First Franklin Financial Corporation ((Compl. Ex. D at 2-3); (Dotoli Aff. ¶ 4)); (2) on June 30, 2005, First Franklin Financial Corporation assigned the note and mortgage to Dreambuilder Investments,

LLC ((Compl. Ex. D at 4–5); (Dotoli Aff. ¶ 5));[14] (3) on December 30, 2015, Dreambuilder Investments LLC assigned the note and mortgage to Plaintiff ((Compl. Ex. D at 6; (Dotoli Aff. ¶ 5)). Defendants offer nothing to contradict or question the authenticity of this evidence. This defense thus fails.

14. <u>Inadequate Consideration</u>

Defendants' fourteenth affirmative defense is that "Plaintiff did not pay fair and adequate consideration for the alleged mortgage and note and [that] Plaintiff would be unjustly enriched if Plaintiff were to receive the relief requested." (Answer ¶ 85.) "Under New York law, consideration is required for a contract to be valid." *Deutsche Bank Sec. Inv. v. Rhodes*, 578 F. Supp. 2d 652, 660 (S.D.N.Y. 2008). "Consideration is simply a bargained-for exchange of promises or performance." *Ferguson v. Lion Holding, Inc.*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004) (citing Restatement (Second) of Contracts § 71 (1981)). "Generally, parties are free to make their own bargains, and, absent a claim of fraud or unconscionability, it is enough that something of real value in the eye of the law was exchanged." *Id.* (quotations omitted).

---

[14] The Court acknowledges a chronological discrepancy in the chain of assignments of the note and mortgage on the Property. The original mortgagee who contracted with Defendant Hoyer was First Franklin, A Division of National City Bank of Indiana. ((Compl. Ex. C at 1); (Dotoli Aff. ¶ 3).) Documents submitted by Plaintiff show that on *June 30, 2005*, First Franklin Financial Corporation assigned the note and mortgage to Dreambuilder Investments, LLC. ((Compl. Ex. D at 4–5); (Dotoli Aff. ¶ 5).) But the evidence indicates that First Franklin Financial Corporation was not assigned the mortgage from First Franklin, A Division of National City Bank of Indiana, until *February 8, 2006*. ((Compl. Ex. D at 2–3); (Dotoli Aff. ¶ 4).) Although one might argue that this chain of events rendered First Franklin Financial Corporation's assignment to Dreambuilder Investments LLC ineffective—which would in turn render the assignment to Plaintiff ineffective—evidence presented by Plaintiff (Note Aff. ¶¶ 7–11) establishes that Plaintiff is nevertheless legally entitled to foreclose. *See E. Savings Bank, FSB v. Whyte*, No. 13-CV-6111, 2016 WL 236221, at *3 (E.D.N.Y. Jan. 20, 2016) (noting that "[a]n affidavit attesting to physical possession of the note prior to commencement of the [foreclosure] action is sufficient to establish physical delivery" and "to transfer both the note and the attendant right to foreclose," thus rendering "any purported deficiencies in the chain of title" irrelevant).

Although Defendants appear to have abandoned this defense by making no reference to it in their summary judgment brief, *First Capital*, 218 F. Supp. 2d at 392–93 n.116, the Court nevertheless rejects it on the merits. The Court's conclusion, *supra*, that Defendant Hoyer executed the note and mortgage (*see* Compl. Exs. B & C)—both of which were eventually assigned to Plaintiff (Compl. Ex. D at 6)—necessarily establishes that the agreement at issue was supported by consideration. *See Teah v. Macy's Inc.*, No. 11-CV-1356, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) (holding that there was "clearly adequate consideration" where the agreement at issue "b[ound] both parties"). Similarly unpersuasive is Defendants' reference to Plaintiff's unjust enrichment. *See Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004) (noting the principle under New York law that "the existence of a written agreement precludes a finding of unjust enrichment").

15. Plaintiff's Corporate Status

Defendants' fifteenth affirmative defense is that Plaintiff is an unauthorized foreign corporation and is therefore barred from maintaining an action in New York state. (Answer ¶¶ 86–89.) New York law provides that,

> [a] foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute[,] . . . as well as penalties and interest charges related thereto, accrued against the corporation.

N.Y. Bus. Corp. § 1312(a). This provision, which "bars unauthorized foreign corporations both from pursuing suits in New York state courts and from pursuing diversity actions in the federal courts of New York," was enacted "to ensure that those foreign companies that engaged in systematic intrastate transactions in New York undertook to conform to registration and taxation requirements before taking advantage of the state's courts as a forum for its grievances." *Nat'l*

*Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 566 (S.D.N.Y. 2009) (quotation omitted).

Although Defendants appear to have abandoned this defense by failing to reference it in their summary judgment brief, *First Capital*, 218 F. Supp. 2d at 392–93 n.116, the Court nevertheless rejects it on the merits. Plaintiff states that it "has submitted its application for authority to do business in the State of New York to the Division of Corporations and on November 10, 2016 it was in fact issued a Certificate of Authority to conduct business in New York." (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J., Dkt. 62, at 28). Plaintiff has submitted to this Court a document from New York State's Division of Corporations verifying its authority to conduct business in New York. (*See* New York Department of Corporations Form, Dkt. 60-9, at 2–3.) The Court therefore rejects this defense. *See also Gustavia Home, LLC v. Rutty*, No. 16-CV-2823, 2017 WL 354206, at *1 (E.D.N.Y. Jan. 24, 2017) (noting that Gustavia Home, LLC "sought and obtained a license to do business in New York"), *vacated on other grounds* 720 F. App'x 27 (2d Cir. 2017).

16. Excessive Interest and Fees

Defendants' sixteenth affirmative defense is that "Plaintiff and its alleged predecessors-in-interest have excessively delayed prosecuting this action" and "Plaintiff's dilatory behavior has allowed the amount of interest that Plaintiff now seeks to increase greatly." (Answer ¶¶ 91–93.) Although Defendants appear to have abandoned this defense by failing it reference it in their summary judgment brief, *First Capital*, 218 F. Supp. 2d at 392–93 n.116, the Court nevertheless rejects it on the merits. Any dispute about excessive interest or fees necessarily entails a determination of the specific amount of damages owed to Plaintiff. As the Court has noted throughout this Memorandum & Order, "[a] dispute as to the exact amount owed by the mortgagor

to the mortgagee may be resolved after a reference pursuant to RPAPL 1321, and the existence of such a dispute does not preclude the issuance of summary judgment directing the sale of the mortgaged property." *Baumann*, 160 A.D.2d at 831–32.

### C. Defendants' Counterclaim and Cross-Motion

Citing New York's Real Property Law § 282, Defendants bring a counterclaim "seek[ing] attorneys' fees and costs under the terms of th[e] alleged mortgage." (Answer ¶ 99.) *See* N.Y. Real Prop. § 282(1) (providing that a mortgagee may collect attorneys' fees and costs "as the result of the failure of the mortgagor to perform any covenant or agreement contained in such mortgage"). Because the Court has concluded that Plaintiff is entitled to summary judgment, this counterclaim is necessarily dismissed. *See Onewest Bank, N.A. v. Melina*, No. 14-CV-5290, 2015 WL 5098635, at *5-6 (E.D.N.Y. Aug. 31, 2015) ("Because [the plaintiff-mortgagee's] motion for summary judgment is granted, [the defendant-mortgagor] has not successfully defended this action. Accordingly, his counterclaim for attorney's fees is dismissed."). For substantially similar reasons, the Court denies Defendants' cross-motion for summary judgment. *See Colavito v. N.Y. Organ Donor Network, Inc.*, 356 F. Supp. 2d 237, 238 (E.D.N.Y. 2005) (articulating the same reasons to justify both the decision to grant summary judgment to one party and the decision to deny the cross-motion for summary judgment filed by the opposing party).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, Defendants' cross-motion for summary judgment is denied, Plaintiff's motion to strike Defendants' answer and affirmative defenses is denied as moot, and Defendants' counterclaim is dismissed. Plaintiff is directed to submit a proposed judgment of foreclosure providing for a sale of the Property consistent with this Memorandum & Order by February 24, 2019. The proposed

judgment of foreclosure should provide for the appointment of a proposed referee to effectuate the sale and to disperse funds from such a sale.

SO ORDERED.

/s Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  January 24, 2019
            Brooklyn, New York